The Court is taking up Tate Road Solar 1, LLC and Appellant v. County of Winnebago 4250873. This is a consolidated case along with 4250880, North Springfield Solar v. County of Winnebago. And Counsel for the Appellant, if you'll please state your name for the record. Timothy Elliott in the Tate Road case. Thank you. Jim Griffin in the Tate Road case and North Springfield. Thank you. Counsel for the Appellant. Jim Murphy for the County of Winnebago. Thank you. And Counsel for the Appellant, I have that Mr. Griffin will be arguing for approximately 15 minutes and Mr. Elliott for 5. Is that correct? It's actually flipped. I'm going to argue on behalf of Tate Road for 15 minutes and Mr. Griffin on the companion case for 5. All right. Thank you, Counsel for the clarification. Counsel, you may proceed with your argument. Thank you and good morning, Justices. Tim Elliott on behalf of the Plaintiff Appellants in the Tate Road case. In 2021, Illinois announced a statewide policy of transitioning to 100% clean energy by 2050. That was a controversial policy and not everyone agreed with it. So in 2023, the General Assembly enacted the Statewide Siting Act for the purpose of preventing local zoning authorities from blocking solar and wind energy facilities. If you read that Act, every part of that Act, every subdivision from Section B all the way through, I think it's to Section T, imposes a limitation on local zoning authority. It is designed to ensure that if the criteria in that Act are satisfied, that local zoning approvals will be granted. Counsel, if the legislature intended to eliminate local discretion in those decisions, why did they allow a public hearing? The public hearing element is one where you have to meet the requirements. There are certain requirements, there's setbacks, there's heights, there's other things like that. They incorporated an obligation to meet those requirements, right? If members of the public wanted to show up and say, actually I don't think they comply with the fence height or the setback or the screening, they're entitled to make those kinds of showings. That's why we believe the public hearing. So the limitation is on the requirements that are set out in the statute, is that what you're saying? I'm sorry, I didn't... So the limitations are on the requirements. Counties can't interfere with the requirements as they're outlined in the statute. Is that your position? They cannot interfere with those requirements, but they also can't impose requirements that are more restrictive. Well, they didn't say requirements. They said they could impose standards. Actually, they said restrictions. So it's the two provisions that are really important here are section B. They can't restrict the requirements. Counties are free to impose standards, are they not? I'm not sure of the principle difference between standards and requirements, but I would read the language, which is the county may not include requirements for commercial wind energy facilities or commercial solar energies that are more restrictive than those specified in this section, which would then apply to the setbacks and things of that nature. But it could also apply to additional requirements because the... Where does it say that? Pardon me? Where does it say that? It says you cannot impose any requirement more restrictive. Imposing additional requirements... More restrictive than what? Than those in the statute. Okay, let's go back to the requirements outlined in the statute. Sure. So the statute outlines four, five, or six specific standards, fence height, screening, that sort of stuff. You cannot impose restrictions that go beyond those. And that's our position. By imposing or allowing consideration of the special use factors, you are necessarily being more restrictive than what is in the Act. And that's precisely what the Act was intended to forestall. Counsel, if we can follow up with Justice DeArmond's comment. Subsection B has the language that we've discussed frequently, notwithstanding any other provision of the law. But it does state a county may establish standards for commercial solar energy, commercial wind energy facilities, or both. The standards may include all of the requirements. I guess to me, then, the legislature, I feel like you're using the word standards and requirements interchangeably. They do appear to be different. I would agree with you that there may be daylight between them. But in the end, I think that may be a distinction without a difference. There are specific objective standards in the Act. And a county does have discretion to adopt none of those, some of those, or all of those. They can say, we don't want to be as restrictive as the statewide setting. We want to be more wide open. We want to embrace solar and wind more than that. But then the second part says, you can't be more restrictive than what's in the Act. Well, it says the standards may include all the requirements specified in the Act. It may not include requirements that are more restrictive than specified in the Act. What's specified in the Act are the setbacks. I mean, it's a very small list of requirements. I think that's correct, but that also defeats the purpose of the Act. Because what's the point of establishing, for example, the fence height and the setback, if, in fact, you can just say, well, you can do all that, but we're going to find that your particular use isn't compatible with our local desire. Because they include a special use permit language within the Act itself. They amended it and included a special use permit language, didn't they not? In the permitted use. So what they actually did, they're trying to sort of dance between what's a permitted use and a special use. And just for clarification, when we're talking about they, I want to make sure we distinguish between the County of Winnebago versus the statute and legislature. Correct. Thank you, Your Honor. It's the County of Winnebago. So this is a permitted use. If this was a special use, they, Winnebago County, would be required to make findings of fact. Didn't the General Assembly in subsection C introduce the term special use permit? Had it been there before? They did. And that is, we argued in our reply brief, inclusive language. So if you read the entirety of this Act... Well, you have to stop for a minute and just understand what a special use permit is. I mean, it's pretty clear that special use permitting involves a significant amount of discretion, does it not? By definition? Historically, yes. You get to consider some of the subjective factors. So are you saying that for some reason they've used special use permit, but they don't mean special use permit? No, I think what they're doing is they're saying the restrictions in this Act encompass both citing and special use. If they had not included the term special use, someone, maybe even Winnebago County, might argue, all these restrictions, these just apply to citing permits. These don't supersede the historical discretion that we have on special uses. And by using those words in tandem, citing permit and special use, they're saying, no, no. These requirements apply to both. Whether it's a regular citing permit or a special use permit, these require both. And you don't get to circumvent these requirements by resorting to these subjective special use standards. But again, the only requirements are those listed in the statute. I would disagree with you on that. There are certain standards in the statute, but the more restrictive language also... They're not standards, they're requirements in the statute. The county is allowed to impose standards. That is correct, but they cannot be more restrictive than those in here. As to the requirements. Correct. That's the position that the trial court took, which is, hey, you're required to have a 10-foot fence. We're not requiring you to have a 12-foot fence, so we're fine. But the point that we're trying to make is when you impose additional requirements, when you add additional criteria that an applicant has to meet, you aren't necessarily being more restrictive. You're not changing the objective standards. Only as to those requirements. Pardon me? Only as to those requirements. That's where we respectfully disagree. General statutory interpretation. If the legislature uses standards and requirements in the same section of a statute, doesn't that by implication mean that they intend those words to mean something different than the other? In other words, they're not just different versions of the same thing. I would agree with you in the abstract. I disagree on this because I would also say you have to look to Section G of the Act, which is the mandate that says a request shall be approved if the request is in compliance with the standards and conditions imposed in this Act. That's the mandate. If you meet the conditions in the Act, you must be approved. The county cannot go ahead and add the special use factors, particularly in a permitted use circumstance where they don't comply with the requirement that you make your required findings. At this point, we would submit that the 3rd District in the Equity Solar case got it right in saying that the only discretion that the county had was up front to adopt none, some, or all of the requirements. Can we go back just a second? Sure. You stopped your sentence. If the request is in compliance with the standards and conditions imposed in this Act, comma, the zoning ordinance adopted consistent with this code, comma, and the conditions imposed, et cetera, by state and federal statutes and regulations. So they specifically have included the zoning ordinance adopted consistent with this code, and the county did adopt a zoning ordinance consistent with the code. This is the exact argument that the 3rd District in the Equity Solar case rejected, and we think their reasoning is correct on this. I don't believe they adopted the ordinance consistent with the code because they put in that Section 17.3 that creates essentially a zoning class of one for these uses. It's the only permitted use in the zoning code that allows consideration of the special use factors, and it's the only instance in the zoning code where the county is not required to make findings on the special use factors, which essentially would insulate any finding, any denial from judicial review. How do you review findings when there's no findings? Does the statute restrict them from doing that? Yes, we believe it does.  I'm sorry? Where? We believe that the more restrictive language says you cannot consider the special use factors. But they've expressly included special use in the statute. They included the terms citing permit and special use being used in tandem throughout the statute, and as I said, we interpret that. I think the only plausible interpretation is that that's inclusive language. I guess I want to stop there for just a moment, and Justice General, I'll let you jump in if you need to. I don't want to, but I want to clarify that because part of what you argued in your brief is this notion that they are, you know, the language or is used between them, signing application or a permit for special use. So I want to start there, that those arguably with your would be two distinct paths if they would, under the statute. Is that correct? They're two distinct, yes, two distinct paths, but in our view, and I think under the statute, they lead to the same place. But I guess I'll pause. Your argument has been that you are only, this is only an application for site approval. Correct. So if I take you at that portion of the argument and we follow through that, then with your suggestion is setting aside special use, which arguably may or may not, and we talk about the factors, but it's the LaSalle factors that they seem to have incorporated to Winnebago. What I hear you saying to me is the biggest challenge you have is that Winnebago County created an ordinance that lumped permitted use, site application, and special use all into one category, treating them the same. So if I just take back and we look at the statute, not necessarily the ordinance at this point. With your understanding of the statute, would it be that if a county elects to call siting applications, permitted uses, that then the only thing that would occur under the statute is basically this hearing, we're not talking about the ability to cross examine or things of the statute, but just a hearing that would occur where if, for example, the public thought the fence was not going to be 10 foot, that they could challenge or object to that or the zoning board or the county board could make inquiry there. And assuming all of the requirements were met, then it is a requirement that they approve that application. Yes, I agree completely with you. Now I want to keep going with this. Customarily though with permitted uses, would there even be a hearing of any kind or is it just a thumbs up or thumbs down, if you will, on the application? It's not required. But this statute seems to provide it, correct? It's not required typically. Many local zoning authorities will actually still conduct a public hearing to give members the public an opportunity to speak, but it's not typically required under the statute. Okay. However, so the statute gives this additional right, if you will, to at least some type of hearing if we're staying, I'll say, on path one with just a site application. And counsel, I'm going to give you a couple of minutes here because I want to make sure we have time. When we talk though about this language of conditions and requirements, I want to make sure I understand your position clearly. So for example, if the setback from the property line has to be however many feet, could a county impose a standard that says, and that property line will be measured by GPS versus legal descriptions? Could that condition or standard be required as it relates to the requirements? Because if not, what does the condition language mean? Because it clearly gives some additional discretion to the county. So the legislature may have given an answer on this with their recent amendments to this, which become effective in a month or two, because they did address some of that. And they said, hey, you can have some of these requirements. For example, measuring it via GPS rather than some other method. That's not the one they chose, but as long as it's consistent across your zoning code and it's not a special requirement for this use. So in other words, if Winnebago said, every time that there is an instance where we have to measure it, we're going to measure it via GPS, and that's for all of our uses, not just this, the recent amendments would suggest that that's okay. Is that discretion enough to defeat the request for mandamus? No, because this isn't a case where there was evidence presented on that, or there was a doubt that those were valid. So it relates to this specific exercise. This is really just the question of what are the additional, can you consider these additional special use factors? We believe the language in statute is clear when you read throughout it. Their argument is, well, there's historically special use discretion. This is kind of sort of like a special use, even though it's called a permitted use, and therefore the General Assembly left us free to consider these factors. We think that's wrong, very briefly. Number one, it is a permitted use. Thank you, Counselor. You are out of time. You'll have some time to rebuttal. Thank you. Good morning. Jim Griffin on behalf of North Springfield Solar. The North Springfield Solar case is very similar, almost identical, to the Tate Road Solar case. Similar background facts and similar decision by the county board, and we've raised similar arguments here. I just want to address a few additional things. Before you do that, Counselor, I do want to ask this question, because I think the brief is a little bit different in suggesting that the site application and special use, if you will, are interchangeable and would not necessarily be two separate paths. That if someone, if a county elected to treat these as, instead of permitted use, as Winnebago County defined them, but as something that would be a special use within the zoning district of agricultural, if you will, it seems to me in your brief you're suggesting, at least on page 26, that everything is the same, if you will, and those are not distinct, that they're interchangeable, if you will. I'd like you to address that. Well, under the State Siting Act, 12020, the term siting approval and special use are used interchangeably. The only distinction is there's a provision where it says if it's a special use, they're going to allow cross-examination at a public hearing. But that's a purely procedural matter. When it comes to the substance, what are the county's directives? What do the counties have to do or can't do? It's the exact same for a siting approval or a special use permit. They use the term throughout, siting approval or special use. But is a special use a term of art out of the statute as well? Doesn't it set forth a separate section that talks about special uses? It is not a term of art. It is not statutorily defined in the county's code. Section 12009.5 is the general special use provision. It does not include a definition. Now, what it does say, in our contrast, this was the Statewide Siting Act. 12009.5, this is C, states, a special use may be granted only upon evidence that the special use meets the standards established for that classification in the ordinance. So, two major distinctions between that and the Statewide Siting Act. First of all, it says meets the standards established. But it doesn't provide any direction to counties as to what standards they impose. It's left to their discretion. That's the case with the Statewide Siting Act. Specifically says these are the only, you can only impose these requirements and nothing more restrictive. So, major difference there. Two is... But can we read them in harmony to the extent that if it's not a direct conflict, it could be that you're allowed to do this, but it's just more narrow. For example, you can consider some of the LaSalle factors, but not all of them because of the restrictions set forth in the Siting Act. I think the only way you read those in harmony is to accept that there's just two different sets of rules. There's a set of general rules and there's a set of more specific rules for soil work projects. Additionally, in the general special use provision, it says special use may be granted. That's the statutory language. Here, in the Statewide Siting Act, it's shall be approved. And the shall be approved, it's mandatory. There's really no argument that that's not a mandatory as opposed to directory interpretation. And so that is a significant difference from the general special use standard. We went from may to shall be approved. And the circuit court never addressed it. If the request complies with the Act, the local zoning ordinances and other state and federal statutes. Yes, Your Honor. That's all I have. Thank you. A couple of follow-up questions. We've talked a lot about the Act, but do you believe that the language in the statute is clear and unambiguous? Yes, we do. We did include some. The circuit court included some recitation of the background of the law, so we did address that. But we believe it's clear and unambiguous. And procedurally, this case is before us because the motions to dismiss were granted at the trial court level. Procedurally, as we evaluate the request for declaratory judgment that was dismissed and the mandamus, is there anything you'd like to address procedurally before this court with regards to those dismissals? And I guess I'll ask that generally, and then I'll be a little more specific. With regards to the dismissals that occurred, is it your position they're both with prejudice, even though it seemed like they were dismissed and then there was a determination not to appeal, and then there was a subsequent dismissal? The motion to dismiss in both cases was granted without prejudice, with leave to replead, to plead a traditional LaSalle factors type of zoning appeal. We elected and informed the circuit court that we did not want to pursue that, and therefore, he then said that this is now then final and appealable. The North Springfield case trailed that slightly, but by then we told the judges the same thing in that case, that we're not going to pursue a traditional LaSalle factors appeal. As far as the procedural posture of this case, I think that really gets into the shall be approved language. We filed mandamus. We believe shall be approved in the statute is mandamus language. That's language that creates a right to mandamus, and that's what the third district found in equity still. Thank you, counsel. Thank you.  Good morning. I'm Jim Murphy on behalf of the county of Winnebago. Justice DeArmond, I want to sort of follow up on your questions concerning subparagraph G, because it relates to equity solar. As you pointed out, there are three things that must be complied with. Conditions imposed by this act, the zoning ordinance adopted consistent with this code, and conditions imposed under state and federal regulations. One of the problems with equity solar, and I know that's been cited to you, is that equity solar misquoted that provision of the statute. Instead of referring to act, it referred to the county's code. Once, and then the county's code again. As you have indicated, both of you, I think, when the legislature used different words, they mean different things. By bypassing that and not recognizing that, equity solar failed to even address what that distinction could mean. In that case, was it also not an application for a special use permit? It was an application for a special use permit, yes. Just for a point of clarity, it does appear Winnebago County classifies solar energy facilities as permitted uses. It says permitted, and then it treats it as a special use by referring to the special use factors. Historically, when we talk about, because there is historical context with some of these terms that we're using. Historically, in Winnebago County, if something was a permitted use, did I even have to go through any kind of hearing, or was it simply a thumbs up or thumbs down? Or I could just simply not even file an application and move forward? I do not know that specifically, but generally from everything else I know about zoning, a permitted use would be a thumbs up, thumbs down, and more so goes through building code offices. Have you met the setback requirements? It's really like constructing a house on a single lot at that point in time. There really are no hearing requirements. The hearing requirements in this case, as has been pointed out, are very specific with regards to special use, and they are different than siting approvals. Why would the county blend those, call it permitted use, and then blend what I will say appears under the act to be two distinct paths, would they cite application, and then if it was an instance where a county elected to have an ordinance that said, we are going to treat solar facilities as special use, and then proceed with a special use permit and hearing? Yes, well I think I've tried to address that in footnote three of our brief. What happened was the county board was provided with a draft ordinance that included permitted use. It then changed it to include the special use factors. It didn't go back to change that permitted language. So the more recent, most up-to-date indication of the intent was including the special use factors. Would it have been better served had they gone back and changed the permitted use to special use? Absolutely. It would have eliminated the issue. Because even at the hearing, it seems that one of the assistant state's attorneys present did suggest this was not a special use as they were discussing some of the factors, correct? Part of the reason that I'm here, perhaps rather than the state's attorney, is the county decided to hire independent counsel for this. Also, when you're looking at requirements versus standards, when you look at the LaSalle factors, they are more standards because they're not a specific requirement. There is no objective measurement, a specific thing with regards to something that has to be done, and if it's not done, you don't get a permit. It is a balancing test. That is consistent with special use determinations, not just legislatively, but from the Illinois Supreme Court, too. The whole point of special uses is that they are generally allowed, but where they bump up against something which is a unique harm or concern to whatever legislative body it is, the special use can be denied. And it's not something that's left completely without, even if there aren't findings, that you can't attack it at all. It's attacked on a rational basis standard. And that's what I believe this court has said before. The Supreme Court has said it, and it's throughout our briefs. So, the other thing is, this does not, taking on our view of what 5-12020 does, does not completely obliterate it. It still leaves those requirements. You can't have a 100-foot setback if the statute requires a 50-foot setback. You can't require berms when the statute says you cannot impose berms. There are many things like that that are still there. Also, you can't completely prohibit it. You can have it as a special use. You can have it as a permitted use. But it appears to me that Winnebago County's ordinance really blended what appears under the statute to be two different paths. And in this case, do you agree that they each filed a citing application? They did not file pursuant to a special use, at least as far as their zoning application. They filed what they said was, I believe, a citing application. I agree with that. But under the ordinances adopted, and I agree, it's not a perfectly written ordinance because it has the permitted use and it has the factors that can be considered. So when we consider this as a 2-6-15 and the mandamus, I guess one question I do have is, generally when we're looking at that, we're looking at the pleading in the light most favorable. And so, as Justice DeArmond has pointed out, the statute does have that word if it also complies with the other conditions. I guess my question is, though, is if they've met all the requirements, isn't that beyond the discretion such that mandamus might be appropriate? Under our interpretation of it, no, because it also has to be in compliance with the Zoning Act, which is in compliance with the county's code, which is much broader than just Section 5-12020. Hypothetically, let's assume for a moment that your ordinance only addressed special uses. Do you think under the statute a citing application could be treated differently than a special use request? If it just allowed for special uses, I don't think it would be because there would be a special use. If you had just citing, it would be similar to, I guess, a truly permitted use without those additional factors in there. Thank you. What's the owner... What, if any, requirements are there in the Act on what types of ordinances the county may seek to impose or new DOs like they have here? I think the only thing is it goes down through the Act of 5-12020. It goes through a list of what can be done, what can't be done, but it sort of leaves open, perhaps, other areas where it doesn't speak to whether it's good or bad. There was another statute citing, and I don't recall it, but in that statute it said, the legislator said, you can consider these factors and no others. The legislation knows how to truly limit something when it wants to limit something, but then if you go back to the statute or the legislative history, it was clear that at least the sponsor of the bill said that some discretion was supposed to be preserved for the counties. Now, where that is, again, we say because it's special use, that's in that. And, in fact, I think my understanding of equity solar and plaintiff's argument is that special use really doesn't mean anything in the statute. The hearings, which allow for cross-examination and presentation of evidence, really mean nothing because what effect do they have if there's no discretion to determine something as a special use? Timing-wise, the county's ordinance came after the amendment that included the special use language within the statute, did it not? That's correct.  It's reasonable to conclude they took that into consideration. Yes. Is there anything that prohibits them from including the special use permit procedure as part of a siting application if they choose to make it a part of their ordinance? I believe there's not. There's nothing that prohibits that. And that it is allowed, and it's allowed because they recognize they can do it as a special use. And those are the traditional special use standards. So it's seen, and those are the standards that would be looked at at a hearing also. I mean, when we talk about this being somewhat different in that they're using special use language or procedures in what is essentially a siting application, we're also talking about in response to a statute which dramatically changed the discretion granted to counties in overseeing their own zoning.  Okay. I mean, there are certainly limitations. But again, it's still left up in the special use. So with regard to that, with the discretion that we believe that it's allowed within 5-12020, the discretion that is allowed within the UDO for Winnebago County, there is discretion, and therefore mandating this is inappropriate in this case. So dismissal was appropriate. With regard to the declaratory judgment action, it was based on the interpretation of 5-12020. And I think that's why it was dismissed. As counsel said, they chose to stand on those pleadings. They could have amended for a typical LaSalle factors challenge, but chose not to. With regard to the trial court's order, I was trying to figure out what exactly the court meant in finding that they had not cited a reference to the act as part of their declaratory judgment and that that was a reason to deny declaratory judgment. And I think that was actually with regard to the de novo standard of review and not citing that. I think they could have done that with regard to an amended pleading. So why would that by itself be a sufficient basis upon which to dismiss that declaratory judgment claim? I think because it didn't seek the additional reasoning and was just limited to the challenge of 5-12020 and the interpretation of that. That's how I read the opinion. I mean, you could have a declaratory judgment, but once you have determined what the statute means, that's part of it and that takes care of that part of the declaratory judgment. And if you don't have another reason, there is no reason sort of for the declaratory judgment. I think that's the way I understand Judge Arch's opinion. But if, let's assume, if for a minute we determined that the mandamus count was properly dismissed, what effect does that have on a separate declaratory judgment action, if not based on just the language of the statute? Because of the way plaintiffs have framed it, I think their declaratory judgment, and I suppose it depends somewhat how you interpret 5-12020, I don't know that there's anything left of the declaratory judgment action left once that's determined. Again, plaintiffs have not decided to go the separate route of finding that it's improper under a rational basis test, sort of under LaSalle factors. So, that's the decision that they made. I think the interpretation in the mandamus will lead to what happens with the declaratory judgment action also. Counsel, in comparing the LaSalle factors, if you will, to the statute itself, does it appear that the statute precludes consideration of at least a couple of those factors, just by its plain language? And I have to go to particular ones, but there may be some things that it does preclude or limit. At the same time, for example, you can't... I don't think there's anything we should consider as an indication that the procedure set forth in this Act really is very different, and that it is, if you will, as long as the requirements that are set forth, something that has to be approved at the county level. I don't think so, because there are certainly many other factors that are considered within LaSalle factors, within special use considerations that a county could consider outside of those also. I'm going to ask this question of opposing counsel, but I'll ask you as well. Do you believe the statutory language is clear and unambiguous? Well, I think the problem with it is you have two different provisions that seem to have some degree of conflict. You have to try to harmonize those. I think to the extent you're trying to harmonize those, you can go to the legislative history. So, is it truly ambiguous in individual parts? No. But when you put those two together, it does allow you to try to figure out what's this supposed to mean, and what was at the heart of this with regards to the legislative history. And that legislative history, we believe, says that discretion is supposed to maintain in part with the counties, and that quite often is referred to, these are guardrails, and the guardrails are... In fact, you go to it, and the requirements are so that you don't make something so prohibitively expensive. You don't have a setback of 300 yards as opposed to 50 feet. So you have to end up buying several other acres of land. That's what we think those requirements go to. And, again, by allowing it for special use, you've really assured under special use law that they're allowed someplace. You can't deny them for any reason whatsoever. You can't deny it, I don't think, in an agricultural area just because it's taking up farmland. That would be true of any place under an agricultural district. But you can deny it if there are unique factors with regard to that, to the area. And that's what actually the special use statute is 1200.95. So those are the factors that you... why you have it as a special use. And the Illinois Supreme Court in living word has talked about when you deny it because it's appropriate to deny something when there are unique factors, but not when there are factors that are applicable every place within a district. Mr. Your Honors, we would request that you affirm the decision of the trial court unless you have any other questions. Seeing none, thank you, Counselor. Thank you. Thank you, Your Honors. I'd like to start off, I think, where we were in the discussion when I ran out of time and had to sit down, and that is the difference between the permitted and the special use. And Your Honor has said a couple times there's two different tracks, which I think is right. We're in the permitted use track here. First of all, labels matter, and this section is called permitted use. I think what I heard from my colleague is, well, there might have been some intent to have this be a special use, but that can't be. And the giveaway on that is the express provision in Section 173A that there shall be no written findings. If this were a special use, that would actually be illegal because the county's code, Section 12009.5d, requires written findings if you have a special use. So we are unquestionably in the permitted use bucket here. What prohibits the county from including special use conditions within a citing provision? Well, I would go to the mandate then, which is in, and this is the second point I was going to get to because we started to discuss it and got sidetracked. This is Section G, and I want to walk through the language of this because I think the language is quite clear. The request shall be approved. So this is the request. The request shall be approved if the request is in compliance with the standards and conditions imposed in this Act. Now, I'm going to go on, but I want to stop there. Standards and conditions. The term conditions is far more inclusive than just the standards, which I think is a discussion we had earlier. That's the first part of the mandate. Right, the discussion was requirements and standards. Correct. You cannot add to what's in the statute. That's the upshot of that language. We've set forth some very specific objective criteria. We've told you things you can consider and you can't consider, what kind of fees you can impose and not impose, all that sort of stuff. And if the request meets those, it shall be approved. Then we go on to the language that I think my colleague has referred to. The zoning ordinance adopted consistent with this code. Now, the suggestion there is that the language consistent with this code sort of opens up the notion that the traditional special use criteria can be considered. What does consistent with this code mean? Consistent with what the language previously referenced, indicating that counties are required to impose, it will. If counties don't impose an ordinance, then there are certain conditions that apply. So the ordinance that is adopted consistent with the code is the ordinance that the code says or that the statute says, if you don't do this, then X, Y, and Z occur. If I followed you correctly, I think... It's a terrible question, so I don't blame you. Let me try and rephrase it. I think we might be saying the same thing. The county cannot adopt any ordinance and just say, we choose to live under the statute, we're completely fine with what the statute says. Or the county can adopt an ordinance that includes some, none, or all of those requirements, but can't go beyond them. So a county might say, we're fine with the fence site, but we don't even want to require that level of sendback. They can do that. But what the ordinance can't do is go further and impose additional obligations, which is really what 17.3 does, by saying you get to consider the special use factors. And, of course, the particular problem with the special use factors is that they're inherently subjective. And so unlike the objective criteria that are set forth in the Act, special use factors consider things as nebulous as, is it in conformance and harmony with our overall plan? Does it defeat the general welfare? I mean, that would open up a tremendous amount of local discretion that the statute was trying to forestall. But the other point I want to make is, this language has been amended. So the word code there, under a public act, and I have the number, Public Act 104-0458, 104-0458, has been amended. And effective June 1st, what the legislature has said is that word code will now be Act. So they really have taken a step to clarify that this is really, no, they're not talking about everything else in the code. They want you to comply with this Act. And the last point I'd make, because I see my buzzer is on, is even if it were a reference to the general code, that would be circular. Because if you're looking in the county's code for the authoritative provision on what do I do with the permitted use of a solar or wind farm, the portion of the code that addresses that is the Act. The Act is part of the code. And if you're going to go to the code, you're going to go to the newest and most specific part, which is the Act. So either way, you're back at the language of the Act. And with that, I thank you for your time. Unless there are further questions, I will. Counsel, were you the only one arguing in rebuttal then? That was my understanding. Okay, thank you. Thank you very much, Your Honor. The court will take the matter under advisement and stands in recess.